# UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSE AND DENISE AMODOL<br><br>　　　Plaintiffs,<br><br>v.<br><br>HSBC BANK USA, NATIONAL ASSOCIATION, AS TRUSTEE FOR NOMURA ASSET ACCEPTANCE CORPORATION MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-AF1, AMERICA'S SERVICING COMPANY<br><br>　　　Defendants | CIVIL ACTION<br><br>Case No. |

Jury Demand: ☒ Yes ☐ No

**COMPLAINT**

_/s/ Mark S. Cherry_
**MARK S. CHERRY, ESQUIRE**
385 Kings Highway North
Cherry Hill, NJ 08034
(856) 667-1234
Attorney for Plaintiffs

1

## INTRODUCTION

1. HSBC Bank, USA, NA ("HSBC") and America's Servicing Company ("ASC"), upon reviewing Plaintiffs' financial information and modification application, decided to offer them a Home Affordable Modification Trial Period Plan ("Agreement") in early January, 2015. The Agreement required three monthly trial payments in the amount of $4,409.91 due February 1 through April 1, 2015. The Agreement was to automatically convert to a permanent modification following successful completion of the required trial payments as well as submission of any necessary updated financial information. Plaintiffs timely submitted the required trial payments and continued to timely make payments through September 2015. Plaintiffs also complied with all document submission requests. However, in complete breach of the Agreement, Defendants decided to refuse further payments after receipt of the September payment and also did not provide a permanent modification. Defendants instead chose to resume foreclosure proceedings in Monmouth County, NJ, under Docket No. F-59990-10. Final Judgment was entered by that court on January 8, 2016. Plaintiffs ask this Court to find that Defendants improperly denied a permanent modification in violation of New Jersey law and to stay any state court foreclosure proceedings during the pendency of this action.

## PARTIES

2. Plaintiffs, Jose and Denise Amodol, are residents of the State of New Jersey with a residential address at 440 Peter Forman Drive, Freehold, NJ 07728.

3. Defendant HSBC is a resident of the State of South Carolina with a business address at 3476 Stateview Blvd., Mail Stop X7801-02T, Fort Mill, SC 29715.

4. ASC is a resident of the State of Iowa with a business address at P.O. Box 10335, Des

2

Moines, IA 50306-0328.

## JURISDICTION

5. Federal diversity jurisdiction exists pursuant to 28 U.S.C. § 1332 because the plaintiffs are residents of a different state from each defendant and the value of the matter in controversy exceeds $75,000.

6. Venue in this district is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions on which the claim is based occurred in the District of New Jersey.

## STATEMENT OF FACTS

7. On January 13, 2006, Plaintiffs Denise M. Amodol and her husband, Jose Amodol, executed a Note and Mortgage on their property located at 440 Peter Forman Drive, Freehold, NJ 07728.

8. The Note was payable to Lancaster Mortgage Bankers in the amount of $570,500.00.

9. Plaintiffs defaulted on the mortgage payments in August, 2009, although Defendants' foreclosure complaint indicated the default as Dec 2008.

10. Plaintiffs attempted for roughly five years to obtain a modification through private efforts and the New Jersey Foreclosure Mediation Program.

11. Plaintiffs entered into the New Jersey Mediation Program on October 4 2011 and continued to mediate with Defendants until March 12 2013.

12. During this eighteen month period Plaintiffs had to repeatedly and unnecessarily fill out the same modification applications which brutally delayed the modification process

13. These delays plunged Plaintiffs into further debt due to mounting arrears, fees and penalties.

14. Finally, after many incorrect denials and mishaps during the modification process, a Home Affordable Modification Trial Period Plan ("Agreement") was eventually offered and delivered to Plaintiffs on January 13, 2015.

15. The Agreement required trial payments in the amount of $4,409.91 due February 1, March 1, and April 1, 2015.

16. Plaintiffs timely paid the three required trial payments and then continued to make payments through September 2015.

17. Plaintiffs were advised shortly after receipt of the third payment in April by their single point of contact ("SPOC") Tracy Lisk that ASC was working on title issues and that Plaintiffs should keep making their trial payments as a sign of good faith. Plaintiffs were never made aware as to the exact nature of these alleged title issues.

18. On May 7, 2015 and again on May 26' 2015, Plaintiffs sent and resent an Authorization to Release Information as requested by their new SPOC Kathryn Sotter. These requests were related to ASC's continued work on the title issues.

19. Despite the above submissions, Plaintiffs received a denial letter from Kathryn Sotter on May 22, 2015, which indicated the denial was for unresolved title issues.

20. Plaintiffs tried on numerous occasions to contact Ms. Sotter, as well as Ms. Sotter's supervisor, Steven Phillips. Plaintiffs were only rarely able to speak with Ms. Sotter and never spoke with or received a call back from Mr. Phillips.

21. On June 22, 2015 Plaintiffs received another denial letter which once again stated unresolved title issues.

22. On July 7, 2015 Plaintiffs spoke with Rochelle (no last name given), who advised that subordination release documents were received on July 7, 2015. Rochelle put Plaintiffs on hold to try and reach Kathryn but she was not available. Rochelle also emailed Kathryn to ask about any updates but received no response. Rochelle noted that the system indicated that the title department received the documents mentioned above on July 8, 2015.

23. On July 17, 2015 Plaintiffs spoke with Ms. Sotter, who reiterated that the requested subordination documents were picked up by title department.

24. On July 23, 2015, Plaintiffs received another denial letter from Ms. Sotter which indicated that they had failed to meet the requirements of the loan modification process.

25. On July 30, 2015, Plaintiffs were advised by Ms. Sotter that she was going to reach out to the title department to get the information relating to the title issues and repeated denials.

26. Plaintiffs sent a dispute letter on July 20, 2015 appealing and disputing the denial of the HAMP modification due to title issues. Plaintiffs were subsequently told by Ms. Sotter to disregard the most recent denial letter as the title department was still working on the file.

27. On August 6, 2015 Plaintiffs were advised to provide documents from the county clerk's office showing the subordination of Plaintiffs' prior loans through Quicken.

28. Plaintiffs provided the requested documentation on August 12, 2015.

29. Plaintiffs were then transferred to a new specialist, Catherine Davis, who also eventually ceased returning Defendants' calls for unknown reasons.

30. Plaintiffs were advised by various representatives that they should continue making the trial payments, that the modification was ultimately approved pending the title clearance, and that the trial payments were going towards the new loan.

31. Plaintiffs ultimately cleared all title issues and subordination requests issued by Defendants.

32. Unfortunately, Plaintiffs again received a denial letter on September 30, 2015, which indicated that Plaintiffs' funds were being applied to their escrow balance and that the loan was no longer being considered for loss mitigation.

33. On October 1, 2015 Plaintiffs submitted another appeal letter questioning the modification denial as the title issues were cleared.

34. Plaintiffs resubmitted the documentation showing resolution of the title issues on October 12, 2015, per ASC's request.

35. On October 14, 2015 Plaintiffs sent an appeal to the Office of the President at ASC.

36. On October 23, 2015 Plaintiffs spoke with a representative from the Office of the President and were advised that the appeal letter with the attachments showing the resolution of all title issues was received.

37. ASC sent Plaintiffs a letter on October 23, 2015 indicating that they expect to provide appeal review results on or before November 6' 2015.

38. On November 6, 2015 Plaintiffs spoke with Patrick (no last name provided) and were told that ASC would accept the subordination documents for the second mortgage and to again resend title documents from the county clerk's office. Plaintiffs complied with this request and submitted the documents again.

39. Plaintiffs were then advised that ASC expected to have a review response by November 23, 2015.

40. Plaintiffs were then advised that ASC expected to have a review response by December 8, 2015.

41. No response has yet been received from the Office of the President despite ASC's indications to the contrary.

42. HSBC applied for entry of Final Judgment on November 20, 2015 and was granted Final Judgment on January 8, 2016.

## COUNT ONE

## BREACH OF CONTRACT

43. Plaintiffs repeat and reallege all of the allegations set forth above.

44. HSBC, through its servicing company ASC, provided Plaintiffs with a Home Affordable Modification Trial Period Plan which promised a final modification following timely receipt of 3 trial payments in the amount of $4,409.91. These payments were due by 2/1/15, 3/1/15, and 4/1/15.

45. Plaintiffs successfully completed the Trial Plan and also timely paid five subsequent trial payments while they waited for the Final Modification. Defendants, however, did not offer a Final Modification in breach of the Trial Plan's terms.

46. Explicit in this contract is an understanding that Plaintiffs would be out of foreclosure and current on their mortgage if they continue to pay the modified monthly mortgage payments.

47. Plaintiffs were lured into acceptance of the contract's terms by the above-described explicit promises and understandings.

48. A reasonable person would read and rely on the Trial Plan Agreement as a definite offer to settle the foreclosure dispute and provide the homeowner with a revised plan to pay the mortgage balance.

49. Defendants' conduct was in total breach of the Trial Plan's terms and representations.

Defendants' breach includes the multiple denial letters, failure to properly and promptly advise as to the title issues, and ultimate failure to review for and approve a final modification upon satisfaction of those title issues.

50. Defendants' failure to provide the Final Modification Agreement following completing of the Trial Plan constitutes *prima facie* evidence of breach of contract.

51. Plaintiffs suffered damages as a result of Defendants' breach, including but not limited to: trial plan payments, loss of a permanent modification, potential loss of their home, further damage to credit score, further interest accruals on the Note, pain and suffering, and counsel fees.

## COUNT TWO

## CONSUMER FRAUD

52. Plaintiffs repeat and reallege all of the allegations set forth above.

53. Defendants, as a lending institution, are subject to the New Jersey Consumer Fraud Act ("CFA"), *N.J.S.A.* 56:8-1 *et seq.*

54. Defendants, by offering Plaintiffs a Trial Plan Agreement designed to induce Plaintiffs to make payments and also modify the originally executed loan, engaged in unlawful conduct in violation of the CFA by refusing to fulfill the promises under the plan.

55. Defendants misrepresented and falsely promised Plaintiffs that they would be provided with a final modification, released from foreclosure, and deemed current on their mortgage account if they accepted the agreements and paid the new mortgage payments on time.

56. Plaintiffs, relying on and induced by these promises, agreed to the terms of the Trial Plan Agreement and began paying the required payments of $4,409.91.

57. Defendants failed to provide the Final Modification Agreement.

58. Plaintiffs suffered damages as a result of Defendants' unlawful conduct, including but not limited to: trial plan payments, loss of a permanent modification, potential loss of their home, further damage to credit score, further interest accruals on the Note, pain and suffering, and counsel fees.

## COUNT THREE

## REAL ESTATE SETTLEMENT PROCEDURES ACT

59. Plaintiffs repeat and reallege all of the allegations set forth above.

60. Defendants, as lending institutions, are subject to the requirements of the Real Estate Settlement Procedures Act ("RESPA"), 12 C.F.R. Section 1024, 12 U.S.C. 2605.

61. RESPA Section 1024.41(g) states the following:

"If a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process but more than 37 days before a foreclosure sale, a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale, unless:

(1) The servicer has sent the borrower a notice pursuant to paragraph (c)(1)(ii) of this section that the borrower is not eligible for any loss mitigation option and the appeal process in paragraph (h) of this section is not applicable, the borrower has not requested an appeal within the applicable time period for requesting an appeal, or the borrower's appeal has been denied;

(2) The borrower rejects all loss mitigation options offered by the servicer; or

(3) The borrower fails to perform under an agreement on a loss mitigation option.

62. The appeal process of Section 1024.41(h) is clearly applicable as Defendants' accepted Plaintiffs' appeal of the denial and advised that a decision would be issued.

63. Defendants are in violation of Section 1024.41(g) as they still applied for Final Judgment on November 20, 2015 despite having previously indicated that Plaintiffs' appeal was still in review and a decision was pending.

64. Defendants were or should have been aware of the pending appeal process when they filed

9

their application for Final Judgment.

65. Defendants' violation of RESPA warrants a dismissal of the foreclosure proceeding due to their gross disregard for the importance of Plaintiffs' loss mitigation requests and appeals.

## COUNT FOUR

## FAIR DEBT COLLECTION PRACTICES ACT

66. Plaintiffs repeat and reallege all of the allegations set forth above.

67. Section 807 of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692e, prohibits debt collectors from using any false, deceptive, or misleading representation or means in connection with the collection of any debt.

68. Through the practices and means described herein, Defendants, in connection with the collection of the debt on the original loan, used false, deceptive, or misleading representations or means.

69. Defendants' representations under the Trial Plan Agreement constitute false, deceptive, or misleading representations or means, in violation of Section 807 of the FDCPA, 15 U.S.C. § 1692e.

70. Defendants unlawfully utilized the Trial Plan Agreement to induce Plaintiffs into making further payments on their defaulted loan.

71. Defendants' decision to deny the Final Modification Agreement and declare Plaintiffs past due under the original contract terms are violations of the FDCPA.

72. Plaintiffs suffered damages as a result of Defendants' unlawful conduct, including but not limited to: trial plan payments, loss of a permanent modification, potential loss of their home, further damage to credit score, further interest accruals on the Note, pain and suffering, and counsel fees.

## **REQUEST FOR RELIEF**

**WHEREFORE**, in light of the various acts unlawfully committed by Defendants, Plaintiffs request the following relief:

1. For statutory damages and attorneys' fees, including treble damages under the New Jersey Consumer Fraud Act;

2. For statutory damages, attorneys' fees, and costs pursuant to the Real Estate Settlement Procedures Act;

3. For compensatory damages;

4. For consequential damages;

5. For an Order requiring reinstatement of the Making Homes Affordable Trial Plan and expected final modification;

6. For a preliminary injunction staying the state court foreclosure proceedings;

7. For costs of suit; and

8. For whatever additional relief the Court may determine to be just and equitable.

Dated: April 27, 2016

_____
Mark S. Cherry, Esquire
Attorney for Plaintiffs